Max O. ELROD, Jr.,
Respondent-Appellant,

v.

HARRISONVILLE CASS R–IX
SCHOOL DISTRICT,
Appellant-Respondent.

No. WD 36000.

Missouri Court of Appeals,
Western District.

Jan. 14, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 4, 1986.

Application to Transfer Denied April 15, 1986.

---

See also 555 F.Supp. 107.

George Allen Barton, Gregory M. Bentz, Kansas City, for appellant-respondent.

George Edward Kapke, Independence, for respondent-appellant.

Before PRITCHARD, P.J., and SHANGLER and DIXON, JJ.

SHANGLER, Judge.

The plaintiff Elrod, an assistant principal with teacher tenure in the Harrisonville Cass R–IX School District, brought a petition in three counts against the District. Count I was for breach of contract, Count II for violation of 42 U.S.C. § 1983, and Count III for fraud. The plaintiff presented evidence, and at the conclusion of the School District case, the court submitted Count I to the jury and directed a verdict against Count II and Count III. The jury returned a verdict of $50,000 on Count I, but the court reduced the award to $23,375 to conform to the prayer of the petition. The School District appeals from the judgment on Count I, and Elrod appeals the dismissal of Count II. The plaintiff does not contest the entry of adverse judgment on Count III, and that order is now final.

The plaintiff Elrod was employed by defendant School District for the first time during the 1978–1979 academic term. That stint was as a probationary teacher. He had been with the Hickman Mills School District the previous eight years. Elrod signed a contract as a permanent teacher with the defendant School District for the first time for the 1980–1981 school term. That year Elrod was assigned as assistant principal at the Harrisonville Junior High

School. The law requires that an offer of contract to a teacher or administrator shall issue by the Board of Education by April 15 of the year, even though the official information as to projected revenues for school operation may not yet be at hand. To that end, Superintendent of Schools Cook, on February, 1981, wrote Elrod a letter of intent on behalf of the School District to reemploy Elrod for the 1981–1982 academic year. The letter expressed regret that the salary could not yet be stated "due to uncertainty in projected budget revenue and projected budget expenditures for the 1981–1982 school term"—but that a contract would issue as soon as that term could be determined.

The two, Elrod and Superintendent Cook, conferred that February to discuss the evaluation of the work that Elrod performed as assistant principal during the prior year. Dr. Cook expressed satisfaction with that performance and [as Elrod related] told Elrod to expect a five percent increment. Elrod asked "what other principals would be getting," and when informed a wage increase of ten percent, retorted to Cook: "I would like to have a ten percent raise." Cook promised to delve the matter, and then called back [so Elrod continued to relate] to say "that the ten percent would be okay." The School Board tendered a contract on April 13, 1981 which Elrod executed and returned. The instrument, which bore the caption: TEACHER INDEFINITE TERM EMPLOYMENT CONTRACT, provided for a ten and one-half months term of employment to commence on July 30, 1981 for an annual compensation of $23,375 with an additional stipend of $8 per week for out-of-district official travel. A term subjected the contract to modification or termination under the provisions of §§ 168.102 to 168.130, RSMo 1978 [Teacher Tenure Act]. Elrod was aware that the contract was subject to the effect of that enactment.

It became apparent to the Board of Education that the finances of the School District were strained and that reductions in the proposed budget for 1981–1982 would be necessary. The School District had incurred a cumulative deficit of more than $300,000 since the 1979 term, and moreover, the revenues anticipated from the state for year 1981–1982 were less than received for the prior school year. The assessment from the Cass County component of the District also augured a reduction in revenues. Accordingly, the Board acted to reduce the proposed budget by limits on programs, capital expenditures and the elimination of certain positions. The Board also acted to place a number of teachers on unrequested leaves of absence. On June 19, 1981, Superintendent of Schools Cook telephoned Elrod to advise that the Board had acted to place him on unrequested leave of absence. That advisement was confirmed to Elrod by letter. That letter informed Elrod that the action of the Board was taken under § 168.124 and was prompted by the "financial condition of the school district." Elrod was selected for enforced leave as assistant principal for yet another reason: the consolidation of the 9th grade into the senior high school had rendered an assistant principal superfluous at the junior high school where Elrod served. It was a prospect [Superintendent Cook related] disclosed to Elrod earlier at the evaluation conference in February, 1981.

The notice of the enforced leave from employment prompted Elrod to legal counsel and, then, in early July, to clarify to School District Personnel Director Brown that he was a tenured teacher and "should be offered a teaching position." Brown concurred, and informed Elrod "they would offer [him] a teaching position." That assessment of tenure was confirmed to Elrod by the School District some short time later, on July 6, 1981, by letter from Personnel Director Brown:

As you have been previously informed *you have been placed on unrequested leave as an assistant principal for the 1981–1982 school year. You are however being offered a teaching position as a tenured teacher.*

As I have discussed with you previously, should you decide to accept the position,

*the salary would be at the appropriate experience and preparation step on the teacher salary schedule, not the salary for services as an assistant principal.* We must have your decision of acceptance or rejection in writing by July 21, 1981. [emphasis added]

In order to provide a position as teacher for Elrod, on July 16, 1981, the Board of Education placed probationary teacher Keyes on unrequested leave of absence.

The date for teachers to report was August 20, 1981, but despite explicit orientation Elrod reported for work on July 30, 1981 [the date specified in the original contract of April 13, 1981]—we assume, on advice of counsel.[1] The wage tendered to Elrod, $18,775, was the sum allowed by column K, step 12 of the 1981–1982 Teacher Salary Schedule promulgated by the School District, and computed on the basis of qualifications and those other premises of increment the Salary Schedule denotes. Elrod refused the teacher assignment and did not report to work, but attempted employment elsewhere. The assistant principal position Elrod once occupied was never refilled.

The cause of action pleaded and submitted on Count I of the petition rests altogether on the premise that the contract tendered to Elrod on April 13, 1981, and accepted, to commence on July 30, 1981, for a term of ten and one-half months at the annual compensation of $23,375, was for employment *as a teacher*—that is, *to teach.*[2] It is a premise, moreover, which assumes a consummated contract and tolerates no disagreement as to the terms. Thus, the cause of action was submitted to the jury in the form of MAI 26.02, a verdict director for the breach of a bilateral contract where the breach is the sole issue. The defendant School District argues that Count I was not submissible as a matter of law, but if submissible, was in dispute as to the terms of contract, as well as the breach.

The argument of the School District rests on the efficacy of § 168.124 of the Teacher Tenure Act, [a component of the April 13, 1981 contract] that

> [t]he board of education of a school district may place on leave of absence as many teachers as may be necessary because of a decrease in pupil enrollment, school district reorganization or the financial condition of the school district

and the compliance with the proviso

> In placing teachers on leave, the board of education shall be governed by the following provisions:
>
> (1) No permanent teacher shall be placed on leave of absence while probationary teachers are retained in positions for which a permanent teacher is qualified.[3]

---

**1.** The letter from Personnel Director Brown to Elrod on July 29, 1981 illumines the Elrod contention and conduct:

> I am in receipt this day of a letter from Mr. George Kapke, your attorney, stating *your intent to report to work on July 30, 1981 according to the terms of a contract for a position of assistant principal.* As we have previously notified you that position no longer exists because of the necessity to reduce staff due to the critical financial condition of the district. *You have been reassigned to the position of classroom instructor at the senior high school, which assignment is based upon the statutory tenure status you have acquired* because of your position of assistant principal. The district will compensate you for that position at the teacher salary schedule of $18,775.00. *The time for teachers to report is August 20, 1981* and you need not report for duty prior to that date. [emphasis added]

A comparable, but more ample, letter issued from Superintendent Cook to attorney Kapke on July 16, 1981, which explained that the involuntary leave of absence imposed upon Elrod from the position of assistant principal was an exercise under § 168.124 and made necessary by financial straits.

**2.** That premise of recovery merely transliterates into a legal theory the justification Elrod gave for the refusal of the July 29, 1981 tender of teacher employment at $18,775: "I already had a teacher contract that I expected to be lived up to at the pay that was filled in [$23,375]."

**3.** The evidence shows, and the statutes require, that School District contracts with educator personnel be concluded by a date when the public funds available to the District from the school levy are not yet known. The purpose of § 164.124 is to allow a School District whose proposed budget [and obligations of contract

Thus, the School District argues, the action to place Elrod on unrequested leave of absence as an assistant principal for Harrisonville Junior High School, prompted by financial exigency, was a termination of employment and nullification of contract within the express sanction of the statute, and the tender of employment to Elrod as a teacher, honored the proviso that no permanent teacher be enforced on leave while a probationary teacher retains position for which the tenured teacher qualifies. The School District concludes that the offer of contract to Elrod to replace probationer Keyes in the social studies department at the salary [$18,775] commensurate with his experience and preparation step as delineated on the School District teacher salary schedule was a full requital due Elrod under the law.

Elrod argues that § 168.124 of the Teacher Tenure Act appertains to a tenured employee of the School District and not to an employee—such as an assistant principal—without right or expectation to the position. Thus, the argument goes, Elrod could not be placed on unrequested leave of absence from the position of assistant principal, but could be consigned to such a furlough as a permanent teacher— but only on condition that no probationary teacher continued to retain a position for which Elrod, a tenured teacher, qualified to fill. The argument concludes: the School District did not comply with the statute when "it retained probationary teachers in positions Elrod was qualified to fill, [hence]

the termination of Elrod was unlawful," the consequent "reduction of salary [by the subsequent tender of contract to teach for $18,775 the school term] was without authority, and the judgment entered for $23,-375 [the salary under the first tender of contract] was valid as a matter of statutory right."[4]

That construct of premises rests on the implicit assumption, of course, that the contract executed on April 13, 1981, was for employment by Elrod as a tenured teacher *to teach*. It is a syllogism, however, which neither the logic of these statutes allows nor the riddled evidence compels.

■ The power of a school district to furlough on leave of absence as many employees as may be necessary to redress an exigent budget or loss of enrollment under Teacher Tenure Act § 168.124 does not, as the Elrod argument assumes, operate only as to teachers with tenure. The exercise of that option of necessity does not depend upon whether the particular employee enjoys a property interest in continued employment, but befalls all educators of a public school system—temporary and tenured alike. *Frimel v. Humphrey*, 555 S.W.2d 350, 352[5] (Mo.App.1977). Chapter 168 entitled PERSONNEL—TEACHERS AND OTHERS encompasses the Teacher Tenure Act and defines as well the employments of educators excluded from the tenure act. The several provisions of the chapter interrelate to define each other in

with educator personnel] exceeds the actual money later determined to be available for the school year to exonerate such executory contractual obligations, with the proviso only that a teacher with permanent tenure may not be terminated while a position *to teach*, for which that teacher is qualified, remains filled by a probationer. That procedure was followed here.

The dissent would deprive a School District of the efficacy of that statute and so irrevocably bind the School District to pay the wages promised an administrator, although the funds to pay that contract sum are not available and the position has been discontinued—simply because the administrator-contractor also happens to be a tenured teacher.

4. That exegesis confounds two basic notions of public school educator law, one which appertains to *all* certified employees of a school district—probationary teachers, permanent teachers, principals and assistant principals alike— and the other only to tenured personnel. In the absence of a specific provision of contract, any such employee has *no right* to a particular assignment, to teach a particular class or to educate at a particular school. *Carter County R–1 School District v. Palmer*, 627 S.W.2d 664, 667 (Mo.App.1982). A teacher with tenure, on the other hand, enjoys a property interest in reemployment which due process protects—an expectation which cannot inure to a principal or assistant principal. *Williams v. Board of Education, Cass R–VIII School District*, 573 S.W.2d 81, 84 et seq. (Mo.App.1978).

terms of reciprocal purpose, are *in pari materia*, and hence are given an integral construction. *Hudson v. Marshall*, 549 S.W.2d 147, 151[1–3] (Mo.App.1977). In the scheme of chapter 168, the employment and recurrent reemployment of a probationary teacher by a school district invests tenure *as a teacher* and the employment and reemployment of a principal or assistant principal invests tenure *as a teacher* [Teaching Tenure Act § 168.104(4) ]. However, the employment and reemployment of a principal, no matter how recurrent, cannot invest tenure *as a principal.* The employment of a principal *as principal* is governed by the provisions of the chapter—extraneous to the Teacher Tenure Act—which concerns all certificated educators ineligible for permanent status [§ 168.101]. *Williams v. Board of Education, Cass R–VIII School District*, 573 S.W.2d 81, 85[10] (Mo.App.1978). Elrod came to the Harrisonville School District in 1978 a probationary teacher, served two years as assistant principal at the junior high school, and thus earned permanent status—tenure *as a teacher.* § 168.104(4); *Fuller v. North Kansas City School District*, 629 S.W.2d 404, 409[2, 3] (Mo.App. 1981). In year 1980–1981, by now a teacher invested with tenure by virtue of the successive employments as an assistant principal, Elrod once again served as assistant principal. Thus, his contract for that school year was as a permanent teacher employed as an assistant principal: a tenured teacher in service as an untenured administrator.

The appeal poses: what was the employment the contract of April 13, 1981 tendered, and Elrod accepted? Was it to teach or to administrate?

■ Our discussion dispels the Elrod contention that any imperative of § 168.124 confines the power of a school board or district to enforce a leave of absence *only* as to an educator with tenure—and hence, necessarily, a teacher. It dispels also the conclusion Elrod draws as an inexorable concomitant of the statute: that the action of a school board to place on leave confirms

that the employment was intended as an assignment to teach, and not to administrate, and hence the salary term—once accepted—could not be withdrawn with impunity. Our discussion determines, rather, that the entitlement to the $23,375 salary term was not a matter of statutory construction and command—whatever the validity of the instruction under which the verdict was returned—but that the lawfulness of the judgment rests on a fact yet to be determined: whether the employment under the contract of April 13, 1981 was to teach or to administrate. That disputed question of intention, of the performance each party undertook and expected from the other, was never submitted or resolved.

We have rejected the Elrod claim that the School District exercise of the enforced leave option under § 168.124 proves as a matter of law and of statute that contract was for the services of a teacher to teach. The School District also asserts the efficacy of § 168.124 for judgment as a matter of law. The premises of that assertion, as we note, are the authority of a school district under that statute to place an employee on furlough on condition that a probationer not displace a teacher with tenure—a proviso the School District asserts it honored by the tender of the contract to teach at $18,775 for the term by the school board letter of July 29, 1981. That assumes, of course, that the April 13, 1981 contract executed by the School District and Elrod was intended as an employment to administrate, and not to teach.

The statute cannot bear to vindicate the position of either party, therefore, until the undertakings of the April 13, 1981 contract are determined. If as employment of a tenured teacher to teach, then the repudiation of the terms—and the salary—is actionable on contract principles. *Lynch v. Webb City School District No. 92*, 418 S.W.2d 608, 613[1–3] (Mo.App.1967). If as employment of a tenured teacher to administrate, then the repudiation of the assignment as assistant principal and recontract as tenured teacher in lieu of a probationer is valid on statutory principles. § 168.124;

*Frimel v. Humphrey*, 555 S.W.2d 350, 353[6] (Mo.App.1977); *Duncan v. Reorganized School District No. R-1, Benton County*, 617 S.W.2d 571, 572[1] (Mo.App. 1981).

The general law of contracts applies in the construction of contracts with educators, as in any other *Lynch*, supra, at 614. In either case, the intention of the contractors governs, and that intention is drawn from what the terms say in light of the circumstances at the time of the contract event. *Adamick v. Ferguson-Florissant School District*, 483 S.W.2d 629, 632[3, 4] (Mo.App.1972). The occasion for doubt as to the employment intended by the April 13, 1981 agreement is a contract in the form of an agreement with a tenured teacher to teach, but in terms typical of an assignment to administrate. That doubt is heightened by the fortuity that the educator-contractee, Elrod, acquired tenure as a teacher from successive employments as an administrator—assistant principal—and *never* performed as a teacher, tenured or temporary for the Harrisonville School District. The year immediately before [the 1980–1981 term], Elrod, although by then become vested as a tenured teacher, contracted for employment again as an assistant principal of the junior high school. That is to say, Elrod served that year immediately prior as an assistant principal with teacher tenure.

The form executed by the parties on April 13, 1981 bears the caption *Teacher Indefinite Term Employment Contract* and the signatory educator is designated *Teacher* throughout, but the term of employment is for ten and one-half months, for the annual compensation of $23,375 [significantly more than the maximum wage of $20,825 the official salary schedule designates for a teacher], with an additional stipend for within and out of district travel allowance. The usual term of employment for a teacher who teaches, as Elrod acknowledged, is nine months, and a teacher assignment is not allowed the out-of-district travel stipend given an administrator. Nor does any contract term specify the employment assignment, nor did the

antecedent letter from Superintendent Cook of the School District intention to reemploy Elrod for the school term 1981–1982 describe the work duty intended for Elrod. It was the Elrod testimony that the conversation with Superintendent Cook at the precontract evaluation session did not include discussion of "future employment" or the "terms and salary for 1981–1982," but only "percentages of increase in salaries." Elrod was never informed of his "duties for the following year" by Cook or anyone else. Thus, when he executed the contract "[Elrod] did not know that the position [he] was being hired for for the next year was that of assistant principal at the Jr. High School." Elrod acknowledged, however, that Cook "didn't lead him to believe that [he] would have a different position other than the position of assistant principal at the Jr. High School." Elrod acknowledged also that the ten and one-half month term of the contract was typical of school administrator and counselor employment, and not that of a teacher.

The Cook narrative of that precontract evaluation event was significantly different:

> All the discussions we had on evaluation were geared toward his position as assistant principal ... At that time the discussion was for his position to be assistant principal, just as it was with all the other administrators on their assignments. We had no discussion with Mr. Elrod that his assignment would be nothing less than as assistant principal at that time, and he knew that.

A component of that precontract discussion, Cook testified, was also that the assistant principal position at the junior high school "might be eliminated by the [B]oard" under the fiscal or enrollment exigencies of the statute.

■ This disparate and contradictory evidence made the issue of intention to contract—the work duty term of the employment—one of fact. The form of the contract [designated for a permanent teacher employment] did not, as Elrod contends,

preclude an issue as a matter of law. *Willett v. Reorganized School District No. 2 of Osage County,* 602 S.W.2d 44, 47[4] (Mo.App.1980). The instruction on which the verdict was returned, submitted on the model of MAI 26.02, *assumes terms of contract and obligation to perform not in dispute,* and hence, even if the evidence raised an inference of the term of contract Elrod assumes as a matter of law—that the assignment was *to teach*—that issue could have been submitted only on the model of MAI 26.06 verdict director *Breach of Bilateral Contract—Terms and Breach in Issue. Braun v. Lorenz,* 585 S.W.2d 102, 107[1–3] (Mo.App.1979). The question remains whether under *all* the evidence Elrod proved a submissible case at all on the theory litigated: that the April 13, 1985 agreement was intended as the contract of a tenured teacher *to teach.* We decide it was not, and that the defendant School District was entitled to a direction of verdict and entry of judgment on Count I.

The proof of Count I consists of the contract form itself [in terms, an agreement for tenured teacher employment but devoid of any description of the employment duty] and the Elrod testimony that at no time prior to the execution of the contract on April 13, 1981 was he informed of his "duties for the following year" by Cook or anyone else. We have already noted that the fortuity that a contract between a school district and an educator is on a printed form designed for permanent teacher employment [but devoid of description of employment assignment] does not per se prove that the contract was to teach nor preclude evidence of the employment intended. *Willett v. Reorganized School District No. 2,* 602 S.W.2d 44, 47[4] (Mo. App.1980). We conclude also that the full evidence allows no inference that the contract intended the Elrod employment as an assignment *to teach* but allows inference only that the assignment was *to administrate.*

The first intimation to Elrod that the School District intended to reemploy him for the 1981–1982 term was the February 26, 1981 letter from Superintendent Cook.

That communication made no mention of an employment assignment, nor of salary. An evaluation conference ensued between the two, some time the following month. It was the Elrod testimony that "future employment" was not discussed, nor salary, nor work assignment, but only "percentages of increase." That testimony—all elicited on direct examination—then developed into a self-contradiction:

Q. [By Elrod counsel]: At the time of your evaluation, were—were percentages of increase in salaries discussed?

A. [By Elrod] Right, yes, they were.

Q. When was that?

A. At my evaluation.

Q. Did Dr. Cook tell you the percentage of increase you should expect?

A. Yes. I think he said a five percent raise.

Q. Did you have—Did you question him on that? Did you have a dialogue on that?

A. Yes, I did.

Q. What was the nature of that conversation?

A. *I considered that low, and asked what other principals would be getting, and he informed me ten percent.*

Q. And what did you say then?

A. *I said if my evaluation was that good, I didn't see why I should get five percent; I would like to have a ten percent raise.*

Q. Did you have further discussions with him at any time concerning that increase?

A. No. He said he would look into it and get back to me.

Q. Did he ever get back to you?

A. *A day or so later he called back and said that the ten percent would be okay.*

\* \* \* \* \* \*

Q. Were you later issued or given a contract with the school district?

A. Yes. The contract was sent over from the school board for me to sign in April.

Q. I'm going to hand you what has been previously marked as Plaintiff's Exhibit 2 [the executed April 13, 1981 contract] and ask if you can identify that?

A. *This is a—the contract that was sent to me to sign, uh, in the month of April, 1981.*

[emphasis added]

This consecutive narrative contradicts the antecedent Elrod answers, all drawn from him on direct examination, that the position of employment was not discussed with Cook at that evaluation session immediately before the April 13, 1981 contract issued and was executed. The subject of discussion, as the colloquy repeatedly confirms, was not only "percentages of increase," as the prior Elrod answer had it, but the increase *principals would be getting*, and so an increase condign for his own services. It was in every sense a negotiation for a salary increase in position—that of a member of the principal cadre, the only position Elrod ever occupied with the School District. The contract which then issued and was executed on April 13, 1981, accommodated the Elrod insistence that the salary for his services conform to the amount due other principals whose work performance were of like merit. That sequential and amplified Elrod account of the interchanges with Cook at that evaluation session negates exactly the prior responses in the direct examination that the conversation never touched the subject of the work duty intended by the contract for year 1981–1982.

Contradictory testimony of a witness, given without explanation or excuse for the variance, nullifies its probative effect. *Nolan v. Joplin Transfer & Storage Co.*, 239 Mo.App. 915, 203 S.W.2d 740, 745[9, 10] (1947). A variance which amounts only to discrepancy, on the other hand, goes to credibility and weight, and hence retains whatever value as proof as the fact-finder may attribute. *State v. Brady*, 561 S.W.2d

748[3] (Mo.App.1978). That the Elrod discussions with Superintendent Cook as to what percentage of increase "other principals would be getting" for the academic term to come—and his insistence on a like ten percent raise—was not merely a discrepancy with the prior testimony that he was never informed of his "duties for the following year" but a blatant contradiction of that theme of litigation that the contract was intended as an employment to teach and not to administrate is confirmed by the Teacher Salary Schedule promulgated by the School District for 1981–1982. The educator-signatory of the April 13, 1981, contract expressly acknowledges receipt of "a copy of all Board Policy pertaining to teachers that has been enacted as of the date hereof." The School District 1981–1982 Teacher Salary Schedule was a Board policy adopted on March 27, 1981, and hence furnished to Elrod as an element of contract. That Schedule depicts that wages of employees who teach are calculated by the invariable factors: number of years of experience and educational qualifications. The increments are not by percentiles [as in the case of principals, assistant principals and other administrators], but by a predetermined sum between each of the seventeen steps, equal as to a given step— whatever the precedent wage of any teacher. That is to say, the increment for a teacher who teaches is not a negotiated percentile of the wage for the prior year, but the sum imposed by the schedule. That Elrod could not but have understood that the contract meant employment as an administrator [and therefore that his testimony on that essential subject was not simply variant but in contradiction] appears again from the explicit salary schedule. The maximum pay allowed any teacher to teach [at optimum step 17K] is $20,825— and that for seventeen years of teacher experience. The salary term the April 13, 1981 contract contains is $23,375, more than $2000 in excess of what a teacher who teaches may earn, and more than $4000 than the $18,775 allowable to a 12K, a teacher with twelve years overall experi-

ence and academic qualification as a specialist—such as Elrod.

An exhibit tendered by Elrod and received as evidence also tends to contradict the essential breach of contract to teach thesis of recovery. The evidence was that those employed by the School District to teach were scheduled to report on August 20, 1981, while assistant principals and other administrators commenced the ten and one-half month work year on July 30, 1981. Elrod was placed on enforced leave of absence as an assistant principal on June 19, 1981. He was determined to have status as a tenured teacher, and on July 6, 1981, was tendered a position to teach at $18,775 for the academic year. He refused employment at that reduced salary, and engaged counsel. In due course, attorney Kapke on behalf of Elrod wrote School District Personnel Director Brown that Elrod would report to work on July 30, 1981—the date *administrators* commenced the school year. That prompted Brown to advise Elrod that the date for teachers to report was August 20, 1981, and explained [the full text of the letter of response is rescripted as footnote 1]:

> I am in receipt of a letter from Mr. George Kapke, your attorney, stating your intent to report to work on July 30, 1981 *according to the terms of a contract for a position of assistant principal.* As we have previously notified you that position no longer exists because of the necessity to reduce staff due to the critical financial condition of the district, etc..... [emphasis added]

That letter of response was tendered by the *plaintiff* as part of the Elrod proof. It was received as evidence, moreover, without qualification, and so implicitly concedes that the Kapke letter—to which the exhibit responds—was an acknowledgment that the contract was for *assistant principal,* and that the Elrod intention to report for work on July 30, 1981, rather than on August 20, 1981, was as an assistant principal.

Nor does other evidence aid the Elrod case. The School Board proof—expressed through Superintendent Cook—that the employment discussion with Elrod prior to contract was for "nothing less than as assistant principal—and he knew that" never varied. It was reinforced rather by the Elrod deposition testimony, received as an admission against interest:

Q. Mr. Elrod, when you signed the contract of April 13th, 1981, which has been marked Defendant's Exhibit 2, did you think that the contract was for a specific position with the school district, specifically as an assistant principal?

A. I was led to believe since I was hired three years prior as an assistant principal that that would be the duties, but I do realize that I signed a teacher's contract and that the board has a discretion of assigning whatever duty they wish.

Q. So you are not contending that the contract assured you a job as an assistant principal?

A. No.

Q. All right. You said that you thought in your own mind that you would be working as assistant principal. What was the basis for that?

A. Because that's what my position was for the three prior years because my evaluations were very good on that position, and that when I was given a contract it was for ten-and-a-half months.

Q. Now, does that ten-and-a-half month length have some significance in relation to being an assistant principal?

A. Administrators work longer, the counselors work longer. Coaches are given longer contracts than teachers.

Q. What do the teachers' contracts normally run?

A. Nine months.

The testimony given by Elrod on deposition contradicts his trial position on an essential issue and so is substantive evidence of the fact admitted: that when he executed the contract of April 13, 1981, he

understood that the employment was for assistant principal. *Mitchell Engineer Division of Ceco v. Summit Realty*, 647 S.W.2d 130, 141[8–11] (Mo.App.1982). The admission of a party of a material fact relevant to an issue in the case is entitled to considerable weight as substantive proof of the fact admitted. *Creager v. Chilson*, 453 S.W.2d 941, 943 [1, 2] (Mo.1970).

A prima facie case once proven, the cause may not be taken from the jury because the plaintiff owns the right for the jury to pass on the credibility of the adversary witnesses and the weight of the testimony presented. *Smith v. Prudential Insurance Company of America*, 300 S.W.2d 435, 440[2–4] (Mo.1957). Where the evidence of the plaintiff proves the case of the defendant, however, or when the proofs and reasonable inferences lead to only one conclusion under the facts and law, no issue remains for the jury. *Kauble v. MFA Mutual Insurance Company*, 637 S.W.2d 831, 833[3, 4] (Mo.App.1982). The Elrod testimony, on the one hand, that the employment occupation was never discussed prior to contract and, on the other, that he negotiated the wage due an administrator [a salary later embedded into the contract], was a contradiction of the postulate of any recovery: that the employment intended by the contract was to teach, not to administrate. Contradictory testimony of a witness on an issue—without other explanation—does not make a prima facie submission on that issue. *Adelsberger v. Sheehy*, 332 Mo. 954, 59 S.W.2d 644, 647–[6–8] (1933). The evidence in the case still probative, rather, proved the defense: that the contract intended employment as an assistant principal, an administrator. Count I was not proven.

There remains Count II. That pleading asserts a claim under 42 U.S.C. § 1983 for constitutional tort: that the School District unilaterally and without just cause reduced the amount of compensation due Elrod, a tenured teacher, without notice or hearing, and hence in violation of due process of law. This denial of process under color of state law [§ 168.124], the allegations continue, was in contravention of the rights of

tenure the Teacher Tenure Act [§§ 168.102 to 168.130] vouchsafed to Elrod. The evidence was heard, and at the conclusion of the entire case, the court directed a verdict on that count in favor of the School District. Elrod appeals from that judgment.

To prove a cause of action under 42 U.S.C. § 1983 there must be some conduct under color of state law which deprives the complainant of a right, privilege or immunity ensured by the United States Constitution. *Tyler v. Whitehead*, 583 S.W.2d 240, 242[4] (Mo.App.1979). Count II frames that official neglect as the reduction of the Elrod salary by the School Board [presumably the $23,375 term in the August 13, 1981 contract], without prior notice or opportunity to be heard—that is, due process of law. The decorum of procedural due process appertains, however, only to interests encompassed by the Fourteenth Amendment protection of liberty and property—then, "the right to some kind of prior hearing is paramount." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569[1], 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972). The claim of an educator [whether to teach or to administrate] to due process, therefore, depends on whether the asserted interest amounts to a property right within the ambit of the Fourteenth Amendment. That is to say, the procedures of due process secure an interest a person has already acquired in a specific benefit. [*Roth*, supra, l.c. 408 U.S. at 576, 92 S.Ct. at 2708–09], and presuppose "a legitimate claim of entitlement to it" [*Roth*, supra, l.c. 577, 92 S.Ct. at 2709].

The appeal from the judgment on Count II poses, therefore, whether the School District denied Elrod the procedures of due process as to any right of property which accrued to him by virtue of that employment. The brief on appeal reduces the issue to this formulation:

In simplest terms, Elrod was a permanent employee. He had more than an expectation of continued employment, he

had a statutory entitlement to that continued employment. That employment was unilaterally terminated by the defendant without due process of law. That, in and of itself, states a cause of action under 42 U.S.C. § 1983.

That argument merely revisits Count I and as facilely conjoins disparate premises to a conclusion of nonsequitur. It assumes the premise, never proven, that the contract was for the employment of a tenured teacher to teach.

■ There was never an issue concerning the Elrod tenure as a teacher, nor that Elrod was entitled under the Teacher Tenure Act to continue in that employment—provided financial or enrollment exigency did not prevent, and even then no leave of absence could be enforced while a probationary teacher retained position for which Elrod qualified. That is the law—§ 168.-124. Thus, the School District does not contend, nor could it, that Elrod, as a teacher with tenure, was not entitled to the procedures of due process to protect his property interest in reemployment. And, in fact, when the position of assistant principal at the junior high school was deleted for urgent fiscal and enrollment reasons, the School District tendered Elrod a position to teach, and displaced a probationer to do so. That Elrod refused the employment does not disparage the School District compliance with the law.

A principal or assistant principal can claim no tenure, de jure or de facto. The positions are denied permanent status by express § 168.104.4. *Williams v. Board of Education, Cass R–VIII School District,* 573 S.W.2d 81, 85[7–10] (Mo.App.1978). Thus, such a public employee can claim no right to the procedures of due process to secure terms of employment, for no property in the benefit of reemployment has accrued. *Roth,* supra, l.c. 408 U.S. at 576, 92 S.Ct. at 2708–09.

The ground the brief formulates as the basis of appeal—that "employment was unilaterally terminated by the defendant without due process of law"—can have efficacy, therefore, *only* if the incipient employment under the April 13, 1981 contract "unilaterally terminated" was for a position with tenure. The only educator position with tenure our law acknowledges is that of a permanent teacher to teach. Our decision on Count I already determines that Elrod failed to prove a submissible issue that the contract of April 13, 1981 was for employment to teach. That same ground of decision, reformulated into terms of Count II, also determines the claim under 42 U.S.C. § 1983 against Elrod: the evidence proved no right to continued employment under the terms of April 13, 1981 which due process will protect by prior notice and opportunity for hearing.

The judgment in Count I is reversed. The judgment in Count II is affirmed.

PRITCHARD, P.J., concurs.

DIXON, J., dissents in separate dissenting opinion filed.

DIXON, Judge, dissenting.

Because I believe that the judgment of the trial court should be affirmed, I dissent from that portion of the majority opinion which reverses the judgment.

Elrod brought his action in three counts. Count I was in contract and was submitted to a jury which found in favor of Elrod. The School District has appealed the eventual judgment entered by the trial court on that count in the amount of $23,375. The District's appeal raises the following issues. First, that the trial court should have directed a verdict for the School District because the District had complied with § 168.124, RSMo 1978. Second, that the plaintiff's verdict director modeled on MAI 26.02 was improper since the interpretation of the contract was in issue. Third, that a remittitur should have been entered to the extent of the offer to re-employ at a salary of $18,775, and that the court erred in failing to give the School District's instruction on mitigation of damages.

On the first issue the School District argues that it did not breach its contract because the actions taken by the School District were authorized by § 168.124,

RSMo 1978. To flesh out this argument, the School District cites *Frimel v. Humphrey*, 555 S.W.2d 350 (Mo.App.1977), for the proposition that the statute applies to tenured as well as probationary teachers. The District also urges that under *School District v. Clymer*, 554 S.W.2d 483 (Mo. App.1977), the School District had discretion to manage school affairs and that the evidence was abundant that the condition of the School District required the action that was taken. The argument simply does not meet the issue. There is no dispute in the case that the District needed to retrench. There is no dispute that the District was entitled to place teachers on an unrequested leave of absence to overcome the deficit encountered. The dispute is whether the statute permits the action which the school board undertook in the case.

The statute in relevant part follows:

**168.124. Board may place on leave—provisions governing.**—The board of education of a school district may place on leave of absence as many teachers as may be necessary because of a decrease in pupil enrollment, school district reorganization or the financial condition of the school district. In placing teachers on leave, the board of education shall be governed by the following provisions:

(1) No permanent teacher shall be placed on leave of absence while probationary teachers are retained in positions for which a permanent teacher is qualified;

(2) Permanent teachers shall be retained on the basis of performance-based evaluations and seniority (however, seniority shall not be controlling) within the field of specialization;

§ 168.124(1)–(2), RSMo Supp.1984.

The parties have assumed that the plaintiff Elrod's contract was as a "teacher" so as to bring the contract within the language of the first paragraph above. Based upon the plain, unambiguous language of the contract which was offered and accepted, he was a teacher. An entirely different issue might be presented if the contract

had been in terms of one serving as a member of the administrative staff, and not as a teacher. The District, in its testimony, conceded that under the original contract Elrod could have been assigned as a teacher.

Assuming then as have the parties that the original contract was as a teacher, with an assignment as principal, what does the statute permit? The statute permits the District to place such a tenured teacher on involuntary leave of absence when no probationary teacher remains employed in a position for which the permanent teacher is qualified. No other meaning can be given to the statutory language:

(1) No permanent teacher shall be placed on leave of absence while probationary teachers are retained in positions for which a permanent teacher is qualified;

§ 168.124(1).

The District had no right to place Elrod on leave of absence on June 6 because there was a probationary teacher still employed.

After the probationary teacher was displaced, the School District could have place Elrod on a leave of absence *if* no other probationary teachers remained *and* a determination was made under § 168.124(2) that he was not entitled to retention within his field of specialty. The only evidence as to other probationary teachers was from the plaintiff Elrod who said Claudia Keyes and Steve Hopkins, both probationers, held positions for which he was qualified. Claudia Keyes was later placed on leave of absence. Hopkins was not. The only evidence was that the statute had not been complied with and that the District had no authority to terminate the Elrod contract. The motion for a directed verdict was properly overruled.

The second issue raised by the District is that plaintiff's verdict director was improper. The District argues that the meaning of the contract is unclear and that the terms were in dispute. The District obfuscates when it asserts that there was a dispute as to the interpretation of the con-

tract. It argues there was a dispute as to the meaning of § 168.124. There could be no dispute as to the meaning of the statute insofar as the retention of probationer-status teachers is concerned. The statute could not be stated in more unequivocal terms. All of the discussion and argument concerning the *assignment* of Elrod is likewise immaterial. There is no exception in the statutory language for teachers employed as administrators. Elrod's contract was either covered by the statute or it was not. If it was covered by the statute, the statute was not complied with because Elrod was placed on leave of absence while a teacher with probationary status remained in employment. What the District seeks to do is to have the statute interpreted so as to provide a different treatment for tenured teachers employed as administrators. There is nothing in the statute to support that proposition. District also contends that the issue was whether or not the District complied with § 168.124 and that issue was never presented to the jury. This latter contention has already been answered. The District did not comply with the statute and there is no evidence to the contrary.

Teachers's contracts are no different than other contracts. They are to be enforced as written. Unless the statute permits the District to avoid the contract, Elrod was entitled to its performance. Nor does the salary schedule for teachers affect the dispute in any way. The schedule by its terms denies any contractual effect and positively asserts that it is advisory only. The District specifically reserved the right to deviate from the schedule. The District admitted at least one teacher was employed for an extended term beyond the scope of the teachers' salary schedule. The proffered re-employment of Elrod at a reduced salary is, simply put, an attempt to vary the terms of a written contract with no basis in law to support the attempt.

Insofar as the issue of remittitur is predicated upon the refusal of the District's offered instruction on mitigation, the point is not properly preserved as the instruction is not set out in the brief. The District also

urges as a matter of law that the verdict should be reduced by the salary of the proffered reemployment as a teacher. The issue of mitigation, absent exceptional circumstance, is one for the jury. The issue of reasonableness is implicit in mitigation. *Wolf v. Missouri State Training School for Boys*, 517 S.W.2d 138, 143 (Mo. banc 1974). The District's argument is, in effect, an argument that the verdict is against the weight of the evidence. Such a determination is solely for the trial court and poses no issue for this court.

I would affirm the judgment of the trial court.