

# In the
# Missouri Court of Appeals
## Western District

DAVID DWYER,

          Appellant,

v.

KANSAS CITY MISSOURI SCHOOL DISTRICT,

          Respondent.

WD76984

OPINION FILED:

September 16, 2014

---

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Patrick William Campbell, Judge**

**Before Division Two: Victor C. Howard, P.J.,**
**James Edward Welsh, and Anthony Rex Gabbert, JJ.**

David Dwyer filed a lawsuit against the Kansas City Missouri School District for wrongful termination and age discrimination after being notified that his teaching position was being eliminated due to a "reduction in force." Dwyer appeals the circuit court's grant of a directed verdict for the District on the wrongful termination claim and the jury's verdict in favor of the District on the age discrimination claim. We affirm.

### Background

David Dwyer began teaching agricultural education for the Kansas City Missouri School District in August 1991. During the 2009-2010 school year, he was one of three agricultural education teachers with the District. In order of seniority, those teachers were Charles Foreman,

Dwyer, and Thomas Riley.[1]  In June 2010, due to a decline in student enrollment in the agricultural program, the District placed Riley on an indefinite leave of absence.

In May 2011, Dwyer signed a renewal of his teaching contract with the District for the upcoming 2011-2012 school year.  Dwyer thereafter received a letter from the District, dated June 28, 2011, informing him that, due to a "reduction in force," his position teaching agricultural education was being "eliminated" effective June 30, 2011.  The letter was signed by Anthony L. Moore, Assistant Superintendent, Human Capital Management & Support Services.  It was prepared by Robert Wilcox, Director of Capital Management, who reported to Moore.

Having taught for the District for twenty years, Dwyer qualified as a "permanent teacher" whose employment was governed by the Teacher Tenure Act, §§ 168.102-.130, RSMo.[2]  As such, the District could **terminate** his teaching contract "only for statutory cause and subject to statutory due process."  *See Hilfiker v. Gideon Sch. Dist. No. 37*, 403 S.W.3d 667, 669 (Mo. App. 2012) (citing §§ 168.106, .114-.120).  Section 168.124 of the Act, however, permits the District to place a tenured teacher, such as Dwyer, on a **leave of absence** under certain conditions.

In July 2012, Dwyer filed his lawsuit against the District alleging that the District had violated both the Teacher Tenure Act and the Missouri Human Rights Act, §§ 213.010-.137.  Dwyer alleged in Count II of his petition[3] that, as a permanent teacher, he "was entitled to an indefinite contract to continue for an indefinite period," under section 168.106 of the Teacher Tenure Act.  He further alleged that the elimination of his position for the 2011-2012 school year

---

[1]Foreman was several years older than Dwyer and Riley, both of whom were about forty-eight years old in 2009.  After Dwyer 's furlough in 2011, Foreman was the only agriculture teacher remaining with the District.

[2]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2011 Cumulative Supplement.

[3]Dwyer dismissed Count I of his petition with prejudice on the first day of trial.

constituted a "wrongful termination," in that a "reduction in force" is not a reason for which the District could lawfully terminate his contract under section 168.114 of the Act. [4] Dwyer alleged in Count III that the District had discriminated against him based on his age (forty-nine), by eliminating his teaching position, replacing him with a younger, less-qualified teacher, and denying him the opportunity to receive temporary certification in other subjects.

Wilcox testified at trial that he hand-delivered the June 28th letter to Dwyer at a face-to-face meeting with him. Dwyer testified that Wilcox confirmed to him that his position was being eliminated under a "reduction in force" and that Wilcox used the word "furlough." Wilcox told Dwyer that the reduction in force was instituted due to decreased student enrollment in the agriculture program and associated financial considerations. According to Dwyer, Wilcox explained that, as a tenured teacher, Dwyer had precedence over any probationary teacher for any open position for which he held a teaching certificate while on furlough. Wilcox encouraged Dwyer to become certified in another area in order to be placed in an available teaching position, and he referred Dwyer to the District's certification specialist. Dwyer thereafter took a "Praxis" examination[5] and received additional certification in technology and engineering, but the District offered no courses requiring that certification. Dwyer failed to pass the Praxis exams in general

---

[4]Section 168.114.1 provides that "[a]n indefinite contract with a permanent teacher shall not be terminated by the board of education of a school district except for one or more of the following causes:"

(1) Physical or mental condition unfitting him to instruct or associate with children;
(2) Immoral conduct;
(3) Incompetency, inefficiency or insubordination in line of duty;
(4) Willful or persistent violation of, or failure to obey, the school laws of the state or the published regulations of the board of education of the school district employing him;
(5) Excessive or unreasonable absence from performance of duties;  or
(6) Conviction of a felony or a crime involving moral turpitude.

[5]Praxis examinations are a series of tests "taken by individuals entering the teaching profession as part of the certification process required by many states and professional licensing organizations." Educational Testing Service, http://www.ets.org/praxis (last visited August 27, 2014).

science and exceptional education. He was not called back to teach but remained on furlough because there were no positions available for which he was certified.

The District presented evidence that the District was faced with a significant budget deficit during the 2009-2010 school year, and the Board of Directors ("Board")[6] concluded that it must make changes to the District's composition. Assistant Superintendent Moore testified that correcting the budget deficit required the "arduous process" of making reductions in both teachers and administrative staff, closing schools, and eliminating programs. Arthur Benson, a lawyer and former member of the Board, testified that the District had too many schools and that student enrollment had been declining for twenty-five years. Benson explained that decreased student enrollment meant decreased funding based on the way the State determines aid for public education. Benson testified that, at a March 24, 2010, Board meeting, he proposed, and the Board approved, a Resolution that authorized a reduction in force of both permanent and probationary teachers due to decreased pupil enrollment, school district reorganization, and the financial condition of the district (the statutory criteria necessary for implementing such a reduction under section 168.124). The Resolution listed the Superintendent's office, Human Resources, and Business Finance as the departments responsible for implementing the Resolution.

At the conclusion of all the evidence, both Dwyer and the District moved for a directed verdict on Count II. Although Dwyer's petition did not cite or raise any allegations with regard to section 168.124, Dwyer argued at trial (over objection), that the District breached its contract with him because the Board did not *authorize* the elimination of his position, as required by

_____

[6]While the more common designation is a "Board of Education," section 168.104(1) defines that term as "the school board or **board of directors** of a school district . . . having general control of the affairs of the district." (Emphasis added.)

4

section 168.124. Dwyer argued that he was entitled to a directed verdict on the issues of: whether the Board statutorily could authorize the reduction in force; whether the Board intended to authorize the reduction in force beyond the 2009-2010 school year; and whether the Board could delegate the implementation of the reduction in force to administrative staff.[7] The District argued that Dwyer's claim stated no fact issues for the jury, that all of the relevant issues were questions of law that must be decided by the court, and that it was entitled to judgment as a matter of law on those issues. The District also moved for directed verdict on Dwyer's age discrimination claim in Count III.

The circuit court found that there were no fact issues for the jury to decide as to Count II, and it directed a verdict in favor of the District. The court denied the District's motion for directed verdict on Dwyer's age discrimination claim. That claim was submitted to the jury, and the jury returned a verdict in favor of the District. Dwyer appeals.

**Wrongful Termination Claim**

We first address Dwyer's claim in Point II that the circuit court erred in granting the District a directed verdict on his wrongful termination claim under the Teacher Tenure Act. Dwyer contends that the District failed to establish that it was entitled to a directed verdict (1) because the Board never voted to place him on a leave of absence and could not delegate to the Superintendent the authority to do so, and (2) alternatively, because a fact issue remained for the jury as to whether Dwyer was terminated or placed on a leave of absence.

This court reviews the grant of a motion for directed verdict to determine whether the plaintiff made a submissible case. *Moore v. Ford Motor Co*., 332 S.W.3d 749, 756 (Mo. banc

---

[7]Dwyer's motion was based on his claim that the 2010 Resolution authorizing leaves of absence was legally ineffective to authorize placing teachers on leave of absence in subsequent years without further Board action and there was no Board action that authorized placing him on a leave of absence after May 2011.

2011). "A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence." *Id.* When the grant of a directed verdict is based upon a question of law, we review the circuit court's decision *de novo. Bailey v. Hawthorn Bank*, 382 S.W.3d 84, 92 (Mo. App. 2012). Here, resolution of the issue at hand turns on the interpretation of a statute, which is a question of law. *See id.*

In its motion for directed verdict, the District argued that Dwyer failed to make a submissible case and that Dwyer's claim stated no proper fact issues for the jury, in that all of the issues to be determined were questions of law for the court. The District asserted that it was entitled to judgment as a matter of law on each of those issues, in that (1) section 168.124 of the Teacher Tenure Act authorized the Board to eliminate Dwyer's position due to the decrease in pupil enrollment, financial problems, and district reorganization, and (2) the Board was authorized by section 168.201 to charge the Superintendent, Human Resources, and Business Finance departments with the task of reducing the District's staff.

Following the presentation of evidence to the jury, the circuit court directed a verdict in favor of the District on Count II. The court made the following findings:

> My reading of 168.124 is that the Board's charge under that is to determine that there is a [reduction in force], and I think that the Board did that, and that they do have the ability to delegate authority.
>
> The second question is, can the delegation last for 15 months. . . . We had a discussion, I think, yesterday about, well, how long can that last. And certainly that issue is not before the Court, but can it last until June of 2011, from March of 2010? I don't think that that's a factual issue for the jury to decide. I think that that is a legal issue for the Court to decide, and I do decide that that delegation can last at least until June of 2011.

The circuit court noted that Dwyer made no argument that the reduction in force as implemented was a pretext for anything prohibited by public policy or law, such as discrimination. The court

6

explained that because Dwyer had admitted that no age discrimination occurred in the reduction in force, no factual issues were left for the jury as to Count II. The court determined, as a matter of law, (1) that the Board had the authority to implement a reduction of force under section 168.124, (2) that it had the ability to delegate its implementation to the Superintendent and his staff, and (3) that the Board's delegation could last at least until June 2011.

Our determination as to the propriety of the circuit court's action depends upon the interpretation of various statutes within Chapter 168. In determining the meaning of a statute, we must "ascertain the intent of the legislature from the language used," "give effect to that intent if possible," and "consider [the] words used in their plain and ordinary meaning." *Jackson v. Bd. of Dir. of Sch. Dist. of Kansas City*, 9 S.W.3d 68, 72 (Mo. App. 2000). "In determining the legislature's intention, the provisions of the entire legislative act must be construed together, and if reasonably possible, all the provisions must be harmonized." *Id*.

Under the Teacher Tenure Act, "a permanent (tenured) teacher enjoys an 'indefinite' contract terminable only for statutory cause and subject to statutory due process." *Hilfiker*, 403 S.W.3d at 669 (citing §§ 168.106, .114-.120); *see also* § 168.104(3). The Act defines a "permanent teacher" as "any teacher who has been employed . . . as a teacher in the same school district for five successive years[.]" § 168.104(4). The purpose of the Act "is to establish strictly defined grounds and procedures for removing a permanent teacher." *Jackson*, 9 S.W.3d at 70.

To the extent that a school district may "w[i]nd up with excess teachers," section 168.124 "authorizes placing teachers on leaves of absence" under certain, specific conditions. *Dial v. Lathrop R-II Sch. Dist*., 871 S.W.2d 444, 448 (Mo. banc 1994). It provides, in pertinent part:

> The board of education of a school district may place on leave of absence *as many teachers as may be necessary* because of a decrease in pupil enrollment, school district reorganization or the financial condition of the school district.

7

§ 168.124.1 (emphasis added). The power granted to a school district under section 168.124 has been called an "option of necessity." *Elrod v. Harrisonville Cass R-IX Sch. Dist.*, 706 S.W.2d 465, 469 (Mo. App. 1986). The *Elrod* Court explained that the law requires the Board to issue an offer of teaching contract by a date when the public funds available to the District from the school levy are not yet known. *Id.* at 467, 468 n.3. Thus, "the purpose of § 168.124 is to allow a School District[,] whose proposed budget . . . exceeds the actual money later determined to be available for the school year[,] to exonerate such executory contractual obligations[.]" *Id.*

It is undisputed that the reduction in force that resulted in Dwyer's furlough was necessary because of a decrease in pupil enrollment, school district reorganization, and the financial condition of the school district.[8] Dwyer testified at trial that he was informed of that fact when he met with Wilcox. Former Board member Benson testified that the reduction in force that he had proposed in his motion for Resolution was due to those circumstances as well. Thus, the circuit court properly found, as a matter of law, that section 168.124 granted authority to the District's Board to eliminate the positions of tenured teachers through a reduction in force.

Despite Dwyer's contention that the Board was required to vote in 2011 to change or revoke his 2011-2012 contract, the circuit court found, as a matter of law, that the Board's March 24, 2010, Resolution authorized the elimination of Dwyer's position in 2011. The court did not err in so finding. Benson testified unequivocally that the dire circumstances facing the District

---

[8]There was no evidence that this explanation was a pretextual excuse for eliminating Dwyer's agriculture teaching position as a means of discriminating against him based on his age. Dwyer acknowledged at trial that he did not have a claim for age discrimination as to the elimination of his agriculture education position (in that no younger, less experienced, or probationary teacher had been hired to teach agriculture, and he was both younger and had less seniority than Foreman, the agriculture teacher who was retained). Dwyer argued, rather, that the District's subsequent failure to recommend him for "temporary certification" was based on age discrimination. Because the denial of his attempt at a temporary certificate came after his leave of absence notification (and is essentially unrelated to it), we do not see how the stated reason for elimination of his position could have been pretextual.

8

on March 24, 2010, when the Board action was taken (decreased pupil enrollment, financial concerns, and reorganization efforts) still existed in the summer of 2011 when Dwyer's position was eliminated. He stated that he believed the statutory conditions for the reduction existed continuously until he left the Board in April 2012. Benson acknowledged that he could not speak for the entire Board but stated that it was his intention that, as long as the statutory conditions existed, "we wanted our Superintendent to be able to address them with all the statutory tools that were available to him, because the District was in crisis." He opined that if the District administration chose to place a teacher on leave of absence from March 2011 through April 2012, it needed no other authority than the March 2010 Resolution. Dwyer cites no authority to support his suggestion that there was a one-year time limit on the Board's decision to implement a reduction in force, and we find none in the statutes. The court did not err in finding that this was a question of law or in finding, as a matter of law, that the Board had the authority to furlough Dwyer's position in 2011.

Dwyer also fails to persuade us that the circuit court erred in finding that the Board had the authority to delegate implementation of that reduction in force to administrative personnel. As noted, the Board's 2010 Resolution charged the "Superintendent, Human Resources, and Business and Finance" departments with implementing the reduction in force. Section 168.201[9] gives the Board the authority to "prescribe the powers [and] duties" of the Superintendent and other employees. It provides, specifically, that a board of education "may employ and contract with a superintendent . . . and may employ such other servants and agents as it deems necessary, and prescribe their powers, duties, compensation and term of office or employment." § 168.201.

_____

[9]As explained in *Elrod*, the various provisions of Chapter 168, which encompass the Teacher Tenure Act and define the employment of educators excluded from the Act, "interrelate to define each other in terms of reciprocal purpose, are *in pari materia*, and hence are given an integral construction." 706 S.W.2d at 469-70.

9

The June 28th letter to Dwyer was signed by the District's Assistant Superintendent, Anthony Moore, who was also the head of the Human Capital Management (or Human Resources) department. Thus, the reduction in force as to Dwyer was implemented in accordance with the Board's 2010 Resolution and was authorized by statute.

Dwyer's reliance on *Jackson*, 9 S.W.3d 68, is misplaced. There, the board had delegated its statutory responsibility to **conduct hearings as to teacher terminations** under sections 168.114 and 168.118 to a three-member committee. *Id.* at 70-71. This court held that section 168.118 required the hearing to be "conducted by the board of education," and, thus, the decision must be by a majority of the board. *Id*. As explained by Moore, the duties delegated in this case consisted of an "arduous process" of reducing the number of teachers and staff, closing schools, and eliminating programs. In doing so, section 168.124 required the District to ensure that no tenured teacher was placed on leave while a probationary teacher with the same certifications was retained; that tenured teachers were retained based on both seniority and performance-based evaluations; that tenured teachers were called back if positions become available for which they are qualified; and that tenured teachers retain their tenure. *See* § 168.124.1. The duties associated with that process are more akin to the duties discussed in *Brown Group, Inc. v. Administrative Hearing Commission*, 649 S.W.2d 874 (Mo. banc 1983). There, the Supreme Court upheld the Director of Revenue's delegation of authority to perform the ministerial act of signing certain tax assessments on the basis that to interpret the statutes otherwise **would prove so burdensome that the Director would be unable to perform his required duties**. *Id*. at 877-

10

79.[10] The same is true in this case with regard to the duties of the Board. As stated, section 168.201 expressly authorizes the Board to designate the "powers [and] duties" of the Superintendent and his administrative staff. Thus, the circuit court did not err in concluding that the Board was authorized to delegate these burdensome duties to those entities.

In sum, the circuit court correctly concluded that the Board properly authorized a reduction in force, that it had the ability to delegate that authority, and that the authority still existed at the time of Dwyer's reduction in force.

Dwyer's alternative contention, that a fact issue remained for the jury as to whether Dwyer was "terminated," under section 168.114, or "placed on a leave of absence," under section 168.124, is without merit. Dwyer claims that language in the June 28th letter stating that he was welcome to apply for any open position within the District for which he was qualified and would "be treated in a manner equal with all applicants" indicates that he was being terminated.

We disagree. Viewing the evidence and its reasonable inferences in the light most favorable to Dwyer (*see Moore*, 332 S.W.3d at 756), the record fails to support the claim that a factual dispute existed as to this issue. The evidence was consistent throughout trial that Dwyer was not terminated but was placed on a leave of absence as allowed by section 168.124. The record shows that Wilcox explained to Dwyer that he was being furloughed due to a reduction in force. Dwyer admitted that he understood that he was on furlough, based both on the letter, which stated that his position was eliminated through a reduction in force, and his conversation with Wilcox. He also expressed his understanding that he had priority over prospective teachers

---

[10]We note that this court held in *Cade v. Department of Social Services*, 41 S.W.3d 31, 40 (Mo. App. 2001), that *Jackson* does not stand for the proposition that only ministerial acts may be delegated. *Schumer v. Lee*, 404 S.W.3d 443, 453 (Mo. App. 2013). "It is only when the power of an administrative body . . . to delegate authority must be *implied* that it becomes necessary to examine whether the delegated action is ministerial or discretionary or whether there is a reasonable basis for the implication of the authority." *Id.* (citing *Jackson*, 9 S.W.3d at 71).

11

with less seniority to be called back for any available position for which he was qualified. Dwyer testified that he had been recalled to teach twice previously after being non-renewed, and he believed that the opportunity for recall existed also after this furlough. He also acknowledged that Wilcox had encouraged him to become certified in other areas in order to be called back during the furlough and that he had attempted to do so.

These admissions refute Dwyer's claim that there was a question for the jury as to whether he was terminated or furloughed. The circuit court did not err in concluding that Count II involved only questions of law and in granting a directed verdict for the District on those questions. Point II is denied.

In Point I, Dwyer contends that the circuit court erred in denying his motion for a directed verdict on Count II in which he claimed that, as a permanent teacher, he could be terminated or placed on a leave of absence only by a vote of the Board, and the Board had not voted to authorize his leave of absence under section 168.124. Dwyer argues that the Board's 2010 vote to place some permanent teachers on leave of absence due to lower enrollment and financial constraints was "legally insufficient" to support the termination of his contract in 2011.

We have already determined in Point II that the circuit court properly resolved these legal issues in favor of the District and did not err in directing a verdict in favor of the District as to Count II. We, therefore, need not address Dwyer's claim in Point I that the circuit court erred in denying *his* motion for a directed verdict. Point I is denied.

### Age Discrimination Claim

In Point III, Dwyer contends that the circuit court erred in granting the District's motion *in limine* precluding introduction of the District's 2010 and 2011 Early Retirement Incentive Plans to support his age discrimination claim and that he was prejudiced by that erroneous ruling.

12

"When a motion in limine is sustained, its propriety is judged by the admissibility or inadmissibility of the excluded evidence." *Brown v. Hamid*, 856 S.W.2d 51, 55 (Mo. banc 1993). The circuit court has broad discretion to admit or exclude evidence, and we will not reverse its ruling absent an abuse of discretion. *Id*. at 56. A party also must show that the purported error "materially affected the action." *Aliff v. Cody*, 26 S.W.3d 309, 321 (Mo. App. 2000).

Dwyer acknowledged at trial that he did not have a claim for age discrimination as to the elimination of his agriculture education position (in that no younger, less experienced, or probationary teacher had been hired to teach agriculture, and he was both younger and had less seniority than Foreman, the agriculture teacher who was retained). Dwyer argued, rather, that the District's failure to recommend him for temporary certification was based on age discrimination. Dwyer claimed that he was denied a temporary certificate to teach general science and business for the 2011-2012 school year while other younger teachers were permitted to teach under temporary certifications.[11] In order to prove that claim, Dwyer sought to introduce the District's 2010 and 2011 Early Retirement Incentive Plans as evidence of the District's intent to replace its older teachers with younger teachers.[12]

At the beginning of trial, both Dwyer and the District made arguments regarding the District's motion *in limine* to exclude the Retirement Incentive Plans. The judge took the motion

---

[11]Wilcox testified that the District prefers hiring teachers with full certifications. If such persons are not available, the District will hire persons who obtain "provisional" certification by passing the Praxis examination. Persons with "temporary" certificates are hired only for hard-to-fill positions, such as Chinese. (The evidence showed that less than ten persons were teaching with a temporary certificate during the 2011-2012 school year.) Wilcox stated that in recommending a person for a temporary certificate, the District would seek someone with a specific background in the subject matter. Dwyer's educational background and certification both were in agriculture, thus, he had no other credentials upon which to base a temporary certificate.

[12]In order to be eligible for either of these Plans, an employee needed seventy-five "points" (the sum of the employee's age plus his years of service).

13

under advisement, indicating that he would review the law and consider both motions again as the evidence came in. During a break in the testimony of a former principal who oversaw the District's agriculture program, the court revisited the motions *in limine*. The court ultimately sustained the motion *in limine* to exclude evidence of the Plans.

A ruling on a motion *in limine* is interlocutory and subject to change during trial; thus, it "preserves nothing for appeal." *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003). "The proponent of the evidence must attempt to present the excluded evidence at trial," and "[i]f the evidence remains excluded, the proponent must then make an offer of proof." *Id*. When the testimony of the former principal resumed, Dwyer did not attempt offer the Plans into evidence, and he made no offer of proof. Because Dwyer failed to proffer the plans into evidence at trial or to make an offer of proof, he failed to preserve this issue for appeal.

Dwyer acknowledges the general rule that "appellate courts will not review excluded evidence without a specific and definite offer of proof." *Frank v. Env't Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 883 (Mo. banc 1985). He argues, however, that this situation falls under a narrow exception to the general rule requiring a formal offer of proof. *See id*. We disagree. As the Court explained in *Frank*, this is a "very narrow" exception that requires "a complete understanding . . . of the excluded testimony," that "the objection [is] to a category of evidence rather than to specific testimony," and that "the evidence would have helped its proponent." *Id*. at 883-84. Dwyer does not persuade us that this "very narrow" exception is applicable to excuse the lack of an offer of proof in this case. The exception is inapplicable here because, if for no other reason, the record does not demonstrate that the excluded evidence would have in any way helped Dwyer. Point denied.

14

**Conclusion**

For the foregoing reasons, the circuit court's judgment is affirmed.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.