**Carol McCORMACK, Plaintiff/Appellant,**

v.

**MAPLEWOOD–RICHMOND HEIGHTS SCHOOL DISTRICT BOARD OF EDUCATION, and Charlotte Cobb, Board President, Lynn Shipp, Sue Wadsack, Ann Clark, Mary Tessereau, Roy Nickles, Pickett Lema, Board Members, and Jerry Elliott, Jr., Superintendent, Defendants/Respondents.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 22, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 17, 1996.

Application to Transfer Denied
Jan. 21, 1996.

Lawrence J. Altman, Gerard A. Fowler, Clayton, for plaintiff/appellant.

Thomas A. Mickes, Peper, Martin, Jensen, Maichel and Hetlage, Peter G. Yelkovac, St. Louis, for defendants/respondents.

CRANE, Presiding Judge.

A former public high school principal appeals the entry of summary judgment in defendants' favor on all counts of her petition seeking damages on various causes of action arising out of her midcontract termination as principal. We affirm.

Plaintiff, Carol McCormack, began her employment with the Maplewood–Richmond Heights School District as an assistant principal at the Maplewood–Richmond Heights High School in July, 1991. She was reemployed as a principal under one-year contracts for the 1992–93 and 1993–94 school years. In February, 1994 defendant Jerry Elliott, Jr., the district superintendent, met with McCormack to discuss concerns about her job performance. On March 14 and 15, 1994 the superintendent again met with McCormack to discuss her job performance. At that meeting McCormack was given job targets, which were written notifications of areas that needed improvement. On April 11, 1994, the superintendent issued a memorandum to McCormack advising her that she would be offered a contract for the 1994–95 school year. It also mentioned concerns evidenced by the job targets dated March 14, 1994 that needed to be addressed.

On June 16, 1994 the defendant Maplewood–Richmond Heights Board of Education (the school board) sent McCormack a Letter of Notification setting her salary for the 1994–95 school year. It asked her to sign and return the letter before July 18, 1994 if she intended to be employed by the district for the 1994–95 school year. McCormack signed this letter. On July 20, 1994 McCormack and the superintendent met to review her job targets. At that time the superintendent told her that she had not achieved her job targets and that her performance would be monitored during the 1994–95 school year.

McCormack began the 1994–95 school year as principal at the district's high school. On October 4, 1994 the superintendent met with McCormack and informed her that he intended to request that the school board either terminate her or request her resignation. At that time the superintendent addressed five incidents that led to his decision. McCormack then provided the superintendent with what she described as a "very complete explanation in response to all five incidents addressed." The meeting lasted forty-five minutes to an hour. McCormack testified by deposition that she had a "fair opportunity" to tell him how she felt.

On October 21, 1994 the superintendent advised McCormack by letter that at its Oc-

tober 19 meeting the school board had voted to terminate her current contract and not to renew her contract as a principal for the 1995–96 school year. The letter advised her that if she desired a written statement itemizing the reasons for this decision, it would be provided if requested within ten days. If she desired a hearing before the school board, it would be afforded to her if she requested it within ten days of receipt of the statement of reasons. She could elect an open or a closed hearing. On October 28, 1994 McCormack requested a written statement of the reasons for non-renewal. By letter dated November 7, 1994, the superintendent listed twenty-four reasons her contract was not to be renewed and also advised that McCormack's current contract was terminated for the same reasons. McCormack did not request a hearing with the school board.

On October 28, 1994, the same day she requested a written statement of reasons for non-renewal, McCormack filed a four-count petition in the St. Louis County Circuit Court naming as defendants the school board, seven school board members, and the superintendent. Her subsequently-filed amended petition alleged breach of her 1994–95 employment contract by illegal termination procedures, statutory and constitutional due process violations in the termination of that contract, defamation, and infliction of emotional distress. Each of the counts sought damages arising out of her mid-contract termination. She did not challenge the decision to not renew her contract.

McCormack filed a motion for summary judgment on Counts I and II of her amended petition and defendants filed a motion for summary judgment on all four counts of the amended petition. The trial court granted summary judgment in favor of all defendants on all counts of the amended petition. On appeal McCormack challenges both the denial of her summary judgment motion and the grant of the defendants' motion for summary judgment.

■ For her first point McCormack asserts the trial court erred in denying her motion for summary judgment on Counts I and II. The denial of a motion for summary judgment is not an appealable order even where the order denying summary judgment to one party is entered at the same time as an appealable order granting summary judgment to the other party. *Estate of Knapp by and through Igoe v. Newhouse,* 894 S.W.2d 204, 208 (Mo.App.1995); *Lake Center Boatworks, Inc. v. Martin,* 804 S.W.2d 842, 844 (Mo.App.1991). Accordingly, point one is denied.

■ For her second point McCormack contends as follows:

DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT TO RESPONDENTS ON ALL FOUR COUNTS OF PETITIONER'S FIRST AMENDED PETITION WHEN JUDGMENT SHOULD HAVE BEEN GRANTED TO PETITIONER ON COUNTS I AND II OF HER FIRST AMENDED PETITION AS A MATTER OF LAW AND WHEN THERE WERE GENUINE MATERIAL ISSUES OF FACT IN DISPUTE IN REFERENCE TO COUNTS III AND IV OF PETITIONER'S FIRST AMENDED PETITION WHICH WOULD HAVE PRECLUDED A JUDGMENT FOR RESPONDENTS ON COUNTS III AND IV OF PETITIONER'S FIRST AMENDED PETITION AS A MATTER OF LAW.

The defendants attack this point on procedural grounds, arguing that it does not comply with the "wherein and why" requirements of Rule 84.04(d), and therefore preserves nothing for review. This argument is well-taken.

■ The contentions advanced in this point merely track the standard for granting summary judgment and are too general to raise an issue on appeal. *Chancellor Development Co. v. Brand,* 896 S.W.2d 672, 674 (Mo.App.1995); Rule 84.04(d). These statements do not set forth with sufficient specificity "wherein and why" the trial court erred. In particular, they fail to present the disputed facts and why those facts were material with respect to Counts III and IV and fail to identify the legal theories upon which the trial court should have relied to grant judgment in McCormack's favor as a matter

of law on all four counts. *See Chancellor,* 896 S.W.2d at 674. *See also Sertoma Bldg. Corp. v. Johnson,* 857 S.W.2d 858, 858–59 (Mo.App.1993). Further, phrasing a point in the form of a question is not proper form. *Chancellor,* 896 S.W.2d at 674; *Schnucks v. Bridgeton Health and Fitness,* 884 S.W.2d 733, 741 n. 1 (Mo.App.1994).

■■■ In addition, all of plaintiff's contentions on appeal with respect to the contract count, the statutory/constitutional due process count, the defamation count, and the emotional distress count are made under this one point. When an appellant contends that an order which disposes of multiple counts based on different causes of action is erroneous, a separate point of error with respect to each count is advisable. *Chancellor,* 896 S.W.2d at 674; *Gould v. Missouri State Bd. of Registration for the Healing Arts,* 841 S.W.2d 288, 290 n. 3 (Mo.App.1992). Moreover, separate issues should be stated in separate points. *Thummel v. King,* 570 S.W.2d 679, 688 (Mo. banc 1978); *In re Marriage of Cohen,* 884 S.W.2d 35, 37 n. 1 (Mo. App.1994).

■■■ This point relied on preserves nothing for review. However, because this case involves a matter of public interest, we will address the arguments in the brief which are arguably encompassed by this point so as to render a decision on the merits.

In the argument portion of her brief, McCormack contends that the trial court erred in granting summary judgment on each of the four counts of her amended petition. Rule 74.04(c) provides that summary judgment shall be entered where the moving party has demonstrated, through the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

When considering an appeal from an order granting summary judgment, we view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

Review of summary judgment is essentially *de novo. Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record submitted and the law, we need not defer to the trial court's order granting summary judgment. *Id.*

## Counts I and II

In Count I McCormack alleged that her 1994–95 contract was illegally terminated and sought the alternative remedies of specific performance or damages. In Count II McCormack alleged she was a probationary teacher under § 168.126 RSMo 1994 and was dismissed without being given procedural rights contained in that statute or as required by due process. In their motion for summary judgment on these counts, defendants argued that under the undisputed facts they were entitled to summary judgment as a matter of law because McCormack's termination comported with procedural due process and she was not entitled to the additional statutory procedures found in § 168.126 of the Teacher Tenure Act.

In her brief McCormack addresses Counts I and II together and takes the position that she was entitled to the procedures outlined in the Teacher Tenure Act for dismissal of probationary teachers and her due process rights under that act and the federal and state constitutions were violated by the school board's mid-term termination of her contract. Thus, McCormack's summary judgment challenge to Counts I and II presents a legal issue—the determination of what constitutional and statutory due process rights McCormack was entitled to receive upon the mid-contract termination of her contract as principal.

We first consider the issue of procedural due process [1] under Article 1, § 10 of the Missouri constitution and the Fourteenth Amendment to the federal constitution. In order to invoke the mandates of procedural due process under these clauses, a person must have been deprived of a property interest recognized by the due process clauses of the state and federal constitutions. *Moore v. Bd. of Educ. of Fulton School,* 836 S.W.2d 943, 947 (Mo. banc 1992). A principal, like any public employee with a contract of employment, has a property interest in that current contract of employment which is safeguarded by procedural due process. *Valter v. Orchard Farm School Dist.,* 541 S.W.2d 550, 556–57 (Mo.1976). Thus, a public employee dismissed for cause during a contract term is entitled to notice of the reason for dismissal and the opportunity to be heard. *Id.*

Due process contemplates that the opportunity to be heard be at a meaningful time and in a meaningful manner. *Moore,* 836 S.W.2d at 947. A meaningful opportunity to be heard requires a hearing before the public employee is deprived of any significant property interest. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Where a full post termination proceeding is available, due process requires that the public employee receive some form of pre-termination hearing which provides the employee with oral or written notice of the charges, an explanation of the evidentiary basis for the charges, and an opportunity for the employee to present the employee's side of the story. *Id.,* 470 U.S. at 545–546, 105 S.Ct. at 1495.

It is clear from the record that McCormack was accorded procedural due process. After she signed the contract for the 1994–1995 school year, the superintendent met with her to review her job targets. The superintendent told her she had not met those job targets and her performance would be monitored during the year. The continuing deficiencies were noted in written documents signed by McCormack and the

superintendent. On October 4 she had a pretermination meeting with the superintendent who informed her that he intended to request the school board to terminate her or ask for her resignation and advised her of five incidents which led to his decision. He gave her the opportunity to explain, which she did. On October 21, 1994, she was given written notice of her termination and was offered a list of reasons for termination, which she received, and a hearing, which she did not request. By not requesting the offered post-termination hearing, she waived her due process right to that hearing. *Moore,* 836 S.W.2d at 947. McCormack's procedural due process rights upon termination of her mid-year contract were satisfied.

We next consider whether McCormack was entitled to any additional due process conferred by statute. McCormack argues that she was entitled to the additional procedures set out in the Teacher Tenure Act for the mid-term dismissal of probationary teachers. We disagree that these procedures apply to her dismissal from her position of principal.

Chapter 168 of the Missouri statutes covers personnel matters for teachers and other school employees. Section 168.011 prohibits a person from being employed to teach in a public school unless he or she has a valid Missouri certificate of a license to teach in that position. Section 168.101, which became effective in 1973, governs employment of certificated teachers in non-metropolitan districts who are ineligible for permanent status under the Teacher Tenure Act in the position held and who are not district superintendents. The Teacher Tenure Act, §§ 168.102 to 168.130, which became effective in 1970, governs the employment of permanent and probationary teachers in non-metropolitan districts. Superintendents of non-metropolitan districts are covered by §§ 168.191 and 168.201.

An individual may simultaneously hold more than one position in a school dis-

---

1. Because the position of principal is untenured, no substantive due process rights attach to a principal's reemployment or contract renewal.

*Elrod v. Harrisonville Cass R–IX School Dist.,* 706 S.W.2d 465, 470, 476 (Mo.App.1986).

trict. A principal may also be a tenured teacher. *See, e.g., Elrod,* 706 S.W.2d at 470. Or, a principal may also be a superintendent. *See, e.g., Kish v. Chilhowee R–IV School Dist.,* 814 S.W.2d 649, 650 (Mo.App.1991). The law applicable to the termination or non-renewal of a contract of a school district employee depends on what contractual position is being terminated or not renewed. *Kish,* 814 S.W.2d at 651; *Elrod,* 706 S.W.2d at 470; *Duncan v. Reorganized School Dist. No. R–1,* 617 S.W.2d 571, 572 n. 3 (Mo.App. 1981).

At the time she was dismissed, McCormack was a school principal. She was not a permanent, tenured teacher under the Teacher Tenure Act and she makes no claims as a tenured teacher.

▮ The employment and reemployment of a principal is controlled by § 168.101 RSMo 1994. *Inman v. Reorganized Sch. Dist. No. II,* 845 S.W.2d 688, 690–94 (Mo. App.1993). Section 168.101.1 provides in part that "the school board or board of directors of a school district ... may ... contract and employ legally certified teachers, not employed as superintendent of the district and not eligible under Section 168.104 to gain permanent status or tenure in the position held within the school system." Section 168.101 contains additional subsections mandating the details, procedures, and terms of the employment, reemployment and non-reemployment of these employees. Subsection 6 of that section provides that, upon timely request after receipt of notice of demotion or lack of reemployment, a written statement of reasons and a hearing be given a certificated employee who has been reemployed five times within the district.[2]

Public school principals who have been reemployed five times within the district are entitled to the due process protections of § 168.101. *Beal v. Board of Educ., Etc.,* 637 S.W.2d 309, 310 (Mo.App.1982). Principals are covered by § 168.101 because they are ineligible for permanent status in the position of principal. *See, Elrod,* 706 S.W.2d at 470; *Williams v. Board of Ed., Cass R–VIII Sch. Dist.,* 573 S.W.2d 81, 85 (Mo.App.1978). *See also, Smith v. Dora R–III School Dist.,* 682 S.W.2d 182, 184 (Mo.App.1984).

[T]he employment and reemployment of a principal, no matter how recurrent, cannot invest tenure *as a principal.* The employment of a principal *as principal* is governed by the provisions of the chapter—extraneous to the Teacher Tenure Act—which concerns all certificated educators ineligible for permanent status [§ 168.101].

*Elrod,* 706 S.W.2d at 470.

▮ McCormack did not qualify for the statutory due process afforded principals by § 168.101.6 because she was not reemployed by the board five times as a principal. *Beal,* 637 S.W.2d at 310–11. In addition, McCormack points out that § 168.101 relates only to the non-renewal of a contract on the same terms and in the same position, not to a mid-contract termination. Nevertheless, whether required or not, the school board apparently followed the procedures outlined in § 168.101.6 both in terminating McCormack and in not renewing her contract by offering her a written statement of reasons and a hearing in the manner set out in that subsection.

McCormack argues that the mid-contract termination of her contract as principal should be controlled by § 168.126, a section of the Teacher Tenure Act which governs the employment of probationary teachers. Section 168.126.2 allows a board of education to immediately terminate a probationary teach-

---

2. Section 168.101.6 provides:

6. If such certificated employee has been reemployed five times within the district, the school board, if requested in writing by such certificated employee within ten days after receipt of notice of demotion or lack of reemployment on the same terms and in the same staff position, shall make available in writing a statement of reasons for demotion or lack of reemployment within ten days after receipt of the request. The board shall grant such certificated employee a hearing if requested in writing by him within ten days after the receipt of statement of reasons, the hearing to be held within ten days after the request therefor, and to be open at the request of the certificated employee. The certificated employee may have counsel at the hearing, may testify and offer testimony of witnesses as well as other evidence sustaining his defense and may cross-examine adverse witnesses.

er if that teacher has not made satisfactory improvement within ninety days of receipt of a written statement describing the probationary teacher's incompetency. McCormack asserts she was entitled to this ninety-day notice. Defendants respond that § 168.101 contains all of the statutory employment protection to which a principal is entitled.

The Teacher Tenure Act distinguishes between permanent teachers who have achieved permanent status after five successive years of employment as a teacher in the same district, § 168.104(4), and probationary teachers who have been employed in the same school district five years or less. § 168.104(5).

"The overriding purpose of the Teacher Tenure Act is to 'attain stability, certainty and permanence of employment on the part of those who have shown by educational attainment and by a probationary period their fitness for the important profession of teaching.' "

*Howard v. Missouri State Bd. of Educ.*, 913 S.W.2d 887, 891 (Mo.App.1995) (quoting *Selby v. North Callaway Board of Education*, 777 S.W.2d 275, 276 (Mo.App.1989) (in turn quoting *Lopez v. Vance*, 509 S.W.2d 197, 202 (Mo.App.1974))).

It is well-established that a principal terminated from a principal's position is not entitled to the protections granted a permanent teacher under the Teacher Tenure Act. *Inman*, 845 S.W.2d at 690–94. McCormack, however, contends that a principal terminated from a principal's position is entitled to the process granted a probationary teacher under the Teacher Tenure Act.

McCormack's only legal authority for the argument that principals have the rights of probationary teachers is *dicta* in *Kish*, in which, in a hypothetical discussion of what plaintiff superintendent's rights would have been if she had been terminated as a principal, the court stated she was entitled to the rights of a probationary teacher. 814 S.W.2d at 651. We do not find this *dicta* controlling and conclude that the procedures contained in § 168.126 of the Teacher Tenure Act do not apply to the mid-term termination of principals' contracts.

By its express terms § 168.126 applies only to probationary teachers. Section 168.104(5) defines "probationary teacher" as follows:

(5) **"Probationary teacher"**, any teacher as herein defined who has been employed in the same school district for five successive years or less. In the case of any probationary teacher who has been employed in any other school system as a teacher for two or more years, the board of education shall waive one year of his probationary period;

Section 168.104(7) defines "teacher" as follows:

(7) **"Teacher"**, any employee of a school district, except a metropolitan school district, regularly required to be certified under laws relating to the certification of teachers, except superintendents and assistant superintendents.

"A 'teacher' as used in § 168.104(7) is 'an employee holding a position of the type mentioned in § 168.011, that is, a public school position in which the person was employed *to teach*.' " *Sadler v. Bd. of Educ. of Cabool Sch. D. R–4*, 851 S.W.2d 707, 711 (Mo.App. 1993) (quoting *Hudson v. Marshall*, 549 S.W.2d 147, 153, 94 A.L.R.3d 127 (Mo.App. 1977)) (emphasis in original). So defined "teacher" does not include a school employee who does not perform duties as a teacher. *Sadler*, 851 S.W.2d at 711.

Considering all of the act's various provisions, giving the words used in the act their plain and ordinary meaning, and relying upon *Hudson*, 549 S.W.2d 147, we believe that the protection of the Teacher Tenure Act extends to only those provisions in teacher-school district contracts that cover teaching duties—being only those duties that require a teaching certificate.

*Sadler*, 851 S.W.2d at 711.

Section 168.126 gives boards of education authority to contract with and employ probationary teachers. The probationary teacher's contract is required to specify the number of months school "is to be taught." § 168.126.1. Section 168.126.2 describes the procedures a school board shall take if that probationary

teacher's work is unsatisfactory and allows the board to terminate a probationary teacher who has not made satisfactory improvement after ninety days.

Section 168.126 thus applies to a probationary teacher who has a contract to teach and is employed to teach. The termination procedures set out in § 168.126.2 relate to the termination of the probationary teacher's contract to teach and employment as a probationary teacher. McCormack, who was employed as a principal and who was not employed as a probationary teacher under § 168.126.1 and who had no contract to teach under that section, was not entitled to the procedures outlined in § 168.126.2 with respect to the termination of her principal's contract.

McCormack additionally argues that her contract gave her the rights of a probationary teacher upon termination because it contained the clause:

> The applicable Provisions of the Missouri Teacher Tenure Act, Section 163.102 to Section 168.130, both inclusive, RSMo, and any amendments thereto, together with the Rules and Regulations of the Board of Education are, by reference made part of this agreement.

McCormack's contract was written on a preprinted form entitled "Probationary Teacher's Contract" in which the word "Teacher's" was crossed out and replaced by the word "Principal's." Since we have found § 168.126 not applicable to McCormack, that section is not an "applicable provision" of the Teacher Tenure Act incorporated into that agreement.

The trial court did not err in granting defendants' motion for summary judgment on Counts I and II.

## Count III

In Count III McCormack alleged she was defamed because defendants refused to make public the reason for her termination which, she alleges, implied that she had been guilty of some heinous offense, thus injuring her reputation in the community. An essential element in any defamation case is that the defendant have made a false state-ment *to a third person.* See *Dvorak v. O'Flynn*, 808 S.W.2d 912, 916 (Mo.App.1991). Defendants argue that McCormack is unable to produce any evidence which would allow the trier of fact to find the existence of this element and that she admitted that no false statement was made.

In her amended petition McCormack did not allege that any defamatory statements were made to or heard by another person or persons. In her response to the summary judgment motion and supporting materials she did not identify anyone to whom a defamatory statement was made.

On appeal McCormack argues that she was forced to explain to the public why she was fired and that this constituted a forced self-publication. She did not allege self-publication in her amended petition. The summary judgment record contains no evidence that McCormack was ever forced to explain to anyone why she was fired. The general rule is that a defendant's communication of a defamatory statement only to the plaintiff who then discloses the information to third parties does not subject the defendant to liability. See *Ramacciotti v. Zinn*, 550 S.W.2d 217, 223 (Mo.App.1977).

An exception to this rule arises when the defendant intends or has reason to suppose that in the ordinary course of events the matter communicated will come to the attention of a third person. *Neighbors v. Kirksville College*, 694 S.W.2d 822, 824 (Mo.App. 1985). In *Neighbors* the libelous matter was put into a service letter. The petition alleged that the letter was given to plaintiff to serve as a reference letter and was in fact read by prospective employers. No comparable allegations give rise to this exception in this case.

The trial court did not err in granting summary judgment in Count III.

## Count IV

In Count IV McCormack alleged she suffered emotional distress as a result of defendants' conduct in terminating her contract, denying her statutory and due process rights, and defaming her character. Since summary judgment was properly entered

against her on these three issues, she has no remaining basis to support her claim in Count IV. An action for intentional infliction of emotional distress cannot be maintained where the underlying claims are not actionable and the emotional distress is the alleged consequence of the same acts forming the basis of the underlying claims. *R.J. v. S.L.J.*, 810 S.W.2d 608, 609 (Mo.App.1991). The trial court did not err in entering summary judgment in defendants' favor on this count.[3]

The judgment of the trial court is affirmed.

GERALD M. SMITH and KAROHL, JJ., concur.

---

**3.** Because we have disposed of Counts III and IV on the merits, we do not reach the issues of sovereign and official immunity raised by defendants.