# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1882

_____

| | |
|---|---|
| Karol K. Howard, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * Appeal from the United States |
| Columbia Public School District; | * District Court for the |
| James R. Ritter, individually and in his | * Western District of Missouri. |
| official capacity as the Superintendent | * |
| of the Columbia Public Schools; | * |
| Cheryl Cozette, individually and in | * |
| her official capacity as Assistant | * |
| Superintendent of the Columbia | * |
| Public Schools, | * |
| | * |
| Appellees. | * |

_____

Submitted: January 12, 2004

Filed: April 13, 2004

_____

Before WOLLMAN, RICHARD S. ARNOLD, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Karol K. Howard appeals from the district court's[1] grant of summary judgment in favor of defendants on each of her claims, asserting that there exist genuine issues of material fact to be resolved by a jury. After de novo review and examination of the voluminous record, Turner v. Honeywell Fed. Mfg. & Techs., L.L.C., 336 F.3d 716, 719-20 (8th Cir. 2003), we affirm.[2]

## I.

Dr. Howard was hired in 1998 to be a principal at Robert E. Lee Elementary School (Lee) in the Columbia, Missouri, Public School District, where she served for two years. Dr. Cheryl Cozette, Deputy Superintendent of Elementary Education for the district, supervised and evaluated the elementary school principals in the district and frequently communicated with Howard via email and in person about how things were going at Lee. Howard often asked Cozette for advice on how to deal with particular situations she encountered in working with certain teachers. In monthly meetings with all the principals, Cozette discussed with and encouraged them to implement both the district-wide literacy plan, initiated in the 1999-2000 school year, and each individual school's improvement program.

Towards the end of Howard's second year at Lee, tensions among Lee staff, previously unknown to district-wide leadership, reached a head. Upon receiving a series of letters expressing concern about the tension at Lee due to Howard's leadership (a letter from a "concerned citizen," a letter signed by seventeen faculty who had worked at Lee the previous year, a letter from the PTA president, two letters from concerned parents, and a resignation letter from a Lee teacher stating that she could no longer work under Howard), the District Superintendent, Dr. James Ritter, and Cozette took steps to investigate the situation. Cozette met with Howard several

---

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

[2]Appellees' motion to strike appellant's reply brief is denied.

times to discuss the situation at Lee, expressing concern about Howard's communication and interpersonal relationships with Lee teachers. Howard wrote a detailed letter in response, in which she described all the achievements and improvements that had occurred at Lee under her leadership. The letter did not address possible causes for the tension among faculty or present ideas for improving the situation.

A week later, Cozette met with several of the Lee teachers who had signed the faculty letter to hear their concerns in more detail. Two days later, Cozette met with Howard again and indicated that she did not think Howard would be successful at Lee, given the scope of the discontent among the teachers. Cozette and Ritter met with Howard in July 2000 to discuss a district-wide position in grant writing and data analysis that had been created for Howard and which provided the same salary and benefits as her principalship at Lee. Howard worked in the newly-created position for three days, though she never signed or returned the contract. On the advice of her attorney, she then returned to her former office at Lee, claiming that she was still the rightful principal there. To eliminate the awkward situation for the new administration at Lee and allow for further negotiations, the district temporarily placed Howard on paid administrative leave. It then placed Howard in a newly-established "Principal on Special Assignment" position for the 2000-2001 school year at Blue Ridge Elementary School. Howard performed her duties in this position for the year and was given notice on April 10, 2001, that she would not be rehired as principal for the following year. Although Howard applied for several other principal positions within the Columbia Public School District, she was not hired to fill any of them.

Howard filed a complaint in district court in August 2001, alleging several constitutional violations under 42 U.S.C. § 1983 (freedom of speech, procedural due process, substantive due process and equal protection), as well as alleging several state law claims (tortious interference with contract, breach of contract, and violations

of district policy and state law). She sought, among other things, reinstatement, lost wages and other benefits, attorneys' fees, and a clear record. Following nearly a year of discovery, defendants filed a motion for summary judgment on all counts. Howard filed objections and a motion for partial summary judgment. The district court granted summary judgment on the merits of each of the constitutional claims under 42 U.S.C. § 1983 for the school district and on qualified immunity grounds for Ritter and Cozette. It also granted summary judgment to Ritter and Cozette on each of the state law claims against them. This appeal followed.

## II.

We review a motion for summary judgment in the same manner as that utilized by the district court and affirm if there is there is no issue of material fact and defendants are entitled to judgment as a matter of law. Allen v. City of Pocahontas, 340 F.3d 551, 554-55 (8th Cir. 2003). Although we view the facts in the light most favorable to the non-moving party, we do not accept unreasonable inferences or sheer speculation as fact. See Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1218-19 (8th Cir. 1999). The moving party bears the burden to demonstrate that there is no issue of material fact. The plaintiff may not then simply point to allegations made in her complaint but must identify and provide evidence of "specific facts creating a triable controversy." Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Simply providing a massive record does not satisfy this burden, and we will not sort through a voluminous record in an effort to find support for the plaintiff's allegations.[3] Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113-14 (8th Cir. 2004) (per curiam). See also Johnson v. City of Shorewood, Nos. 02-3562/4081/03-2023, 2004 WL 405692, at *6 (8th Cir. Dec. 18, 2003) ("It is not a court's obligation to search the record for specific facts that might support a litigant's claim[.]"). We consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or

---

[3]Howard's appendix contains some 3,158 pages of material.

purport to state legal conclusions as fact. See Shaver v. Independent Stave Co., 350 F.3d 716, 723 (8th Cir. 2003); Fed. R. Civ. P. 56(e). We examine each of Howard's claims in the light of these considerations.

Defendants Ritter and Cozette have asserted the defense of qualified immunity, a defense that enables government officials to avoid the compulsion to stand trial. Saucier v. Katz, 533 U.S. 194, 200 (2001). In evaluating a claim of qualified immunity, we ask the threshold question of whether the facts alleged show that the official's actions violated a constitutional right. Id. at 201. If no constitutional right would have been violated had the alleged facts been established, "there is no necessity for further inquiries concerning qualified immunity." Id.

## A.

Howard alleges that Cozette, Ritter and the district violated her first amendment right to freedom of speech when they removed her from her position as the principal at Lee. She contends that their actions were motivated by her speaking out in favor of aggressive literacy training and against the exclusionary treatment of minority, disabled, disadvantaged, and special needs children.

A school district may not fire an employee because he or she has spoken critically of the school on a matter of public importance. Pickering v. Board of Educ., 391 U.S. 563, 574 (1968). To establish such a claim, the plaintiff must demonstrate that she has engaged in protected speech (speech on a matter of public concern), that her interest as a citizen in commenting on the issue outweighs the public employer's interest in promoting efficient public service, and that her speech was a motivating factor in the action taken against her. See Calvit v. Minneapolis Pub. Sch., 122 F.3d 1112, 1116 (8th Cir. 1997); Meyers v. Neb. Health & Human Serv., 324 F.3d 655, 659 (8th Cir. 2003).

-5-

Howard cannot succeed on her first amendment claim because she has failed to present any evidence that her speech motivated defendants to terminate her employment. For the purposes of this appeal, we will assume, as did the district court, that Howard's speech involved a matter of public concern. The mere fact that Howard engaged in protected conduct, however, is "not sufficient to give rise to an inference of causation." Allen, 340 F.3d at 555. Some factors that are probative, though not conclusive, of causation, are the timing of the adverse employment action and any evidence of statements made by the defendants with reference to the protected activity. See Meyers, 324 F.3d at 659 (finding an issue of material fact as to causation because the employment action occurred shortly after the speech and was accompanied by comments that supported the inference); Calvit, 122 F.3d at 1118-19 (noting that Calvit's reports about the school's child abuse policy were closely followed by a series of negative employment actions); Allen, 340 F.3d at 555-56 (stating that the significant time lapse between protected conduct and the adverse action could preclude a finding of causation).

Howard's evidence does not give rise to a reasonable inference of causation. She claims that because she initially received favorable reviews and because defendants were aware that she was focused on student improvement, her removal evidences causation. Her surmise to this effect is insufficient to establish a genuine issue of fact, however. When asked why she believed that Ritter and Cozette were motivated by her speech, she replied, "there's no other logical reason" and "He might not have liked what he read in [my principal's report]." These responses reflect pure speculation on Howard's part. In addition, in making these unwarranted inferential leaps, Howard ignores undisputed evidence that actually leads to the opposite conclusion. Howard acknowledges, for example, that the district advocated the same goals of literacy and educational improvement that she claims her advocacy of resulted in her termination. She also acknowledged during her deposition that when she spoke with Cozette about concerns involving various teachers, she did not specifically mention minority, special needs, and disadvantaged students, contending

only that her mention of "students" impliedly included disadvantaged students. She provides no evidence to counter defendants' evidence that they removed her because of the tension among faculty and low morale under her leadership, but merely denies any faults in her leadership. Such claims are insufficient as a matter of law to create a genuine issue of material fact.

**B.**

Howard also contends that defendants deprived her of both liberty and property interests without due process of law. We conclude that Howard has not established a genuine issue of material fact as to either of these claims.

To survive summary judgment on her liberty interest procedural due process claim, Howard must provide evidence that the school district made public accusations about her behavior and her subsequent change in employment "that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir. 1994). The stigma must be significant, and it usually involves allegations of dishonesty, immorality, racism, or a similar character-demeaning charge. Id. See also Putnam v. Keller, 332 F.3d 541, 546 (8th Cir. 2003).

In attempting to make her claim, Howard refers to several pieces of evidence. She alleges that Cozette described her as "bizarre," a mischaracterization of a statement in which Cozette shared with a friend her thought that the situation in which she found herself in relation to Howard was "bizarre." Howard also cites Ritter's August 21, 2000, memorandum to the Board of Education outlining the process of Howard's reassignment and describing his reasoning in concluding that Howard would not be able to provide positive leadership at Lee. This memorandum was not a public document, and it was sent to inform the Board of the change in district-wide positions and principalships. See Columbia Board of Education Rules and Regulations (Board Rules) GCA. The only public document related to Howard

was a newspaper article about her district-wide position as grant writer. While Howard claims that the article stigmatized her, it in fact describes her in positive terms, emphasizing her skills as a grant writer.

Howard has failed to establish that defendants said anything that can in any way be characterized as stigmatizing, for a well-founded expression of concern about a school principal's leadership abilities cannot be held to be such. It is essential that a public employer be able to conduct an internal evaluation of an employee's effectiveness and skill, and thus an employee may not claim that a critical, fact-based review and evaluation of relevant job skills is by and of itself stigmatizing.

To survive summary judgment on her property interest procedural due process claim, Howard must provide evidence that she had a reasonable and legitimate expectation of continued employment. Her subjective and "unilateral expectation" that she had "a legitimate claim of entitlement" to continue as a principal in the Columbia School District is not sufficient. See Board of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972). We look to Missouri law and the terms of her employment to determine whether Howard's interest in her job as principal rises to the level of a constitutionally protected property right. See Id.. "Historical employment practices" may create a legitimate expectation, but such practices must be grounded in a "mutually explicit understanding." Cross v. Hammonds, 223 F.3d 867, 868 (8th Cir. 2000). In this case, there is insufficient evidence of any historical employment practice to create an issue of material fact. We agree with the district court that Howard's assertion to the contrary is insufficient to negate the provisions of state law.

Under Missouri law, and as reflected in the Board's rules, a principal's employment status is governed by the statute applicable to "certificated teachers ineligible for permanent status." McCormack v. Maplewood-Richmond Heights Sch. Dist. Bd. of Educ., 935 S.W.2d 703, 709. (Mo. App. 1996) (stating that principals are

governed under Mo. Ann. Stat. § 168.101). See also Board Rules GCPD at 3. Although the position of principal can never be a tenured one,[4] McCormack, 935 S.W.2d at 709, a principal is entitled to an expectation of continuing employment the following year if she does not receive notice of non-renewal by April 15. Likewise, a principal has a property interest in the employment period specified in the contract. McCormack, 935 S.W.2d at 708.

Because she was employed as a principal in Missouri for only three years (two years at Lee, one year at Blue Ridge), Howard had no tenure rights. None of her one-year contracts made any promises of further employment. Accordingly, she had no right to additional procedural protections in the event of non-renewal.

Howard alleges two due process violations resulting from changes in her employment status. The first of these occurred when she was reassigned to the district-wide position and then to the Blue Ridge position.

Howard had a valid expectation of re-employment under the terms of her prior contract because the problems arose at Lee after the April 15 date had already passed. The contract did not specify that the employment was for Lee, however, so any principalship within the district would fall within the contract's terms. Whether

_____

[4]Under Missouri law, a principal may not gain permanent status or tenure in her position as principal. A principal may be entitled to additional process, however, if she has been reemployed by the district for five or more years. She would then be entitled to the additional process of a list of reasons and a hearing in the case of non-renewal. Mo. Ann. Stat. § 168.101(6) (2004); Appellee's App. at 281-82. A principal may have tenure as a permanent teacher while she is a principal, but she may only be entitled to retain employment in that district as a teacher, not as a principal. Elrod v. Harrisonville Cass R-IX Sch. Dist., 706 S.W.2d 465, 470 (Mo. App. 1986); Mo. Ann. Stat. § 168.104 (2004). Howard was tenured as a teacher in Iowa, but not in Missouri. She has not asserted a right to a teacher position, but asserts that she is entitled to a principal position.

Howard's reassignment to the district-wide position as grant writer was contrary to her entitlement is an issue we need not resolve, because Howard, after ultimately rejecting that position, negotiated a contract for a position as a principal at Blue Ridge. The Blue Ridge contract was substantially the same as her prior contracts at Lee, thus satisfying Howard's statutory expectation of continued employment.

Howard's second claimed due process violation–the failure to renew her Blue Ridge principalship–is without merit, for she received notice before April 15 of that school year that her contract would not be renewed, which was all the process she was due.

In sum, then, Howard's procedural due process claims are without merit, and the district court correctly granted defendants summary judgment on them.

## C.

Howard contends that she suffered two substantive due process violations. The first claimed deprivation–that of her right to engage in her occupation as an educator–was not raised below, and we will therefore not consider it on appeal. See First Union Nat'l Bank v. Pictet Overseas Trust Corp., 351 F.3d 810, 816 (8th Cir. 2003). Her second claimed violation–that the stigmatizing conduct prevented her from being able to clear her name and get a job–was at least arguably raised in the district court. We conclude that the claim is without merit, for in light of our holding that Howard was not subjected to any stigmatizing conduct or comments, there perforce was no conduct on defendants' part that could even arguably be said to rise to the level of that which is sufficient to state a substantive due process violation claim. See Moran v. Clarke, 296 F.3d 638, 644-45 (8th Cir. 2002) (en banc).

## D.

Howard contends that she was treated less favorably than other principals within the district and thus was denied her fourteenth amendment right to equal

protection. She argues that because other principals who were accused of poor leadership were given the opportunity for improvement and were either transferred or rehired, the district effectively established a policy of providing such a probationary period. We conclude that even if Howard has identified similarly situated principals who were under scrutiny for matters of "comparable seriousness," see Warren v. Prejean, 301 F.3d 893, 903 (8th Cir. 2002), her equal protection claim nevertheless fails, for she has not come forward with evidence sufficient to raise an issue of material fact on whether defendants acted for a discriminatory reason. See Keevan v. Smith, 100 F.3d 644, 651 (8th Cir. 1996). Howard's claim that she was treated differently because of her speech fails for the same reason that her first amendment violation claim failed. Her unfounded allegation does not trump the rational explanation defendants have given: that they based their decision on the numerous complaints of tension, low morale, and poor leadership during Howard's tour of duty at Lee.

**E.**

We conclude that Howard's Missouri state law tort and contract claims are also without merit. She brought claims against Ritter and Cozette for tortious interference with contract and breach of contract. The elements of tortious interference with contract are: "(1) the existence of a contract, (2) defendant's knowledge of the contract, (3) that defendant induced or caused the breach of contract, (4) that the defendant's acts were not justified, and (5) that the plaintiff thereby suffered damages." Franklin v. Harris, 762 S.W.2d 847, 848 (Mo. App. 1989) (citing Lick Creek Sewer Sys. v. Bank of Bourbon, 747 S.W.2d 317, 322 (Mo. App. 1988)). Because Ritter and Cozette were Howard's supervisors, presumptively acting in their official capacities and within the scope of their duties, Howard must prove that malice was the reason for the acts in order to show that the acts were not justified, Franklin, 762 S.W.2d at 849, something she has not done. Howard's breach of contract claim is based on a breach of the implied covenant of good faith and fair dealing that is included in every Missouri contract. Acetylene Gas Co. v. Oliver, 939 S.W.2d 404,

410 (Mo. App. 1996).  To prove such a breach, there must also be substantial evidence of bad faith.  <u>Id.</u>  As we have already stated, Howard has provided no evidence beyond her "feeling" that Ritter or Cozette were motivated by a desire to injure her or that they harbored ill-will toward her.  In the absence of such proof, this claim too must fail.

The judgment is affirmed.

_____